56 Cal.Rptr.3d 758 (2007)
149 Cal.App.4th 183
The PEOPLE, Plaintiff and Respondent,
v.
Barry Lane ANDERSON, Defendant and Appellant.
Nos. C047502, C048283.
Court of Appeal of California, Third District.
April 2, 2007.
As Modified April 13, 2007.
*762 Kat Kozik, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., and Bill Lockyer, Attorneys General, Dane R. Gillette and Robert R. Anderson, Chief Assistant Attorneys General, Michael P. Farrell and Mary Jo Graves, Senior Assistant Attorneys General, Charles A French, Supervising Deputy Attorney General, Brook Bennigson, Deputy Attorney General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
HULL, J.
At his first trial, defendant was convicted by a jury of a lewd and lascivious act with a child under the age of 14 years (Pen.Code, § 288, subd. (a); unspecified section references that follow are to the Penal Code), an attempted lewd and lascivious act with a child under the age of 14 years (§§ 664/288, subd. (a)), and 11 counts of possessing child pornography (§ 311.11, subd. (a)). The jury deadlocked on two counts alleging kidnapping with the intent to commit a lewd and lascivious act (§ 207, subd. (b)) and on a one-strike charge alleged in connection with count one, the lewd and lascivious act offense (§ 667.61, subd. (e)(1)). The trial court declared a mistrial on these charges.
Prior to retrial, the People amended the information to add a second "one strike" allegation to court one, that is, an allegation defendant's conduct fell within the sentencing provisions of section 667.61, subdivision (d)(2) in addition to the sentencing provisions of section 667.61, subdivision (e)(1). Upon retrial, defendant was convicted of the two kidnapping offenses and the jury found both one-strike charges true.
Defendant was sentenced on the kidnapping offenses to two determinate terms of 11 years, with one term stayed pursuant to section 654. He received a concurrent term of three years on the attempted lewd and lascivious act offense. He was sentenced under the one-strike law to one indeterminate term of 25 years to life and another of 15 years to life on the lewd and lascivious act offense, with the latter stayed pursuant to section 654. He was sentenced to time served on the child pornography offenses. The court ordered the determinate and indeterminate terms served fully consecutively for an aggregate, unstayed sentence of 36 years to life. The court also imposed a restitution fine of $10,000. Defendant appealed. The court thereafter granted defendant's motion to reconsider the sentence and reduced the restitution fine to $5,000. Defendant again appealed. We have consolidated these appeals for all purposes.
Defendant contends: (1) he was denied a representative jury at his second trial; (2) the appellate record is incomplete; (3) there is insufficient evidence of increased risk of harm to support the kidnapping convictions and one-strike findings; (4) the trial court erroneously modified a kidnapping instruction; (5) the court erred in admitting prior, uncharged offense evidence; (6) the court improperly refused to modify an instruction on prior offense evidence; (7) he was subjected to double jeopardy in connection with retrial of the one-strike charges; (8) there was insufficient evidence to support one of the one-strike findings; (9) the court erred in denying his motion for acquittal in the first trial on the one-strike charge; (10) his conviction for one of the kidnapping charges must be vacated because it is a lesser included offense of another charge; and (11) the court violated his Sixth Amendment rights in imposing the upper term and consecutive sentencing.
We agree with defendant's eighth contention and shall direct that the true finding *763 on one of the one-strike charges be stricken. In all other respects, we affirm the judgment.

FACTS AND PROCEEDINGS
In January 2003, Donna D. (hereafter Donna) lived in an apartment complex at Northview Drive in Sacramento. She occupied a unit with her sister, her sister's children and her mother. The apartment complex covers approximately three acres, with the individual units arranged in blocks of four or more and each unit sharing a wall with those on either side of it. The apartment complex is surrounded by a six-foot fence with two gated vehicle entrances. The vehicle entrances require a "clicker" for admittance. Donna's unit was at one end of a block of apartments from 47 to 53 situated at one corner of the complex near one of the vehicle entrance gates. The fronts of these units face in toward the rest of the complex.
At approximately 5:00 p.m. on January 13, 2003, Donna walked out the front door of her unit in search of her nephew. As she did so, she noticed someone driving out of the apartment complex through the nearby gate and another car drive in while the gate remained open. Donna passed two five-year-old girls, A.B. and E.M., who were playing in front of unit 49. There were no other children or adults around.
Donna proceeded to a park inside the complex in search of her nephew. She did not find him and returned home. As she drew near, Donna noticed a man wearing a black hooded jacket passing by the front door of her unit and the two girls she had seen earlier following him. The man was defendant. As she got nearer, Donna noticed the car she had seen enter the complex parked in a space facing outward with the motor running.
Donna passed by the front of her unit and followed defendant and the girls around the block of units to the back. As she rounded the corner of the building, Donna could see along the back of units 47 through 53. She saw defendant and the two girls behind unit 49. One of the girls, A.B., had her pants down around her thighs and defendant was behind her squatting down. The other girl was standing nearby.
Defendant saw Donna and immediately stood up and zipped up his pants. He began walking away from the girls, who followed him a short distance. Donna went back to the front of her apartment and told her sister to call 9-1-1. Donna's sister called 9-1-1 at approximately 5:17 p.m. As Donna stood in front of her unit, defendant walked by in the direction of his car. Donna said to him, "I saw what you were doing to that little girl." Defendant responded, "You did not see nothing."
Defendant got in his car and proceeded to the entrance gate. While defendant waited for the gate to open, Donna and her sister got the license plate number from his car. They turned this over to the police. Once defendant got outside the gate, he drove away quickly.
A.B. and E.M. testified that defendant told them he had candy and kitties for them to see and they followed him. When they got to the back of the apartments, defendant touched A.B. with his hand under her pants, either on her vagina, as A.B. testified, or on her "butt," as E.M. testified. He did not touch E.M. Defendant also exposed his penis to the girls and told them it was candy. After defendant was observed by Donna, he told the girls to go one way and he went the other. He sounded angry. However, the girls followed a short distance because they still wanted candy and to see the kitties.
Later that evening, defendant called his girlfriend, S.R. He was distraught and said *764 something bad had happened. Defendant told her he had a problem with children and had lured them and touched them. He said somebody had seen him and gotten his license plate number. Defendant called S.R. again later and told her he had lured and fondled the girls. S.R. asked defendant if there was anything in his apartment that would get him in more trouble. Defendant said there was, it was disgusting, but he did not elaborate except to say something about computer disks. The next day, S.R. removed some computer disks and a computer from defendant's apartment. However, she later turned these over to the police.
Defendant was arrested and his apartment was searched. Over 500 images of child pornography were discovered either in the apartment or on the computer disks obtained from S.R.

DISCUSSION

I-III[**]

IV

Modification of CALJIC No. 9.51
The jury was instructed on the crime of kidnapping for purposes of child molestation as follows:
"The defendant is accused in Counts 1 and 2 of having committed the crime of kidnapping for child molesting, a violation of section 207(B) of the Penal Code. Every person who, with the specific intent to commit any act defined in Penal Code Section 288, persuades, entices or seduces by false promises his misrepresentations, or the like, any child under the age of 14 to go into another part of the same county, is guilty of the crime of a kidnapping for child molesting in violation of Penal Code Section 207(B).
"Penal Code Section 288 provides every person who willfully commits any lewd or lascivious act upon or with the body, or any part or member of the body, of a child under the age of 14 years, with the specific intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of the person or the child, is guilty of a crime.
"A `lewd or lascivious act' is defined as the touching of the body of a child under the age of 14 years with the specific intent to arouse, appeal to, or gratify the sexual desires of either party.
"In order to constitute kidnapping for child molesting, the unlawful movement of the child under the age of 14 must be for a substantial distance, where the movement is not merely incidental to the commission of the crime of child molesting in violation of Penal Code Section 288, and where the movement substantially increases the risk of harm to the child over and above that necessarily present in the crime of child molesting itself.
"Substantial distance is defined as follows: A distance more than slight, brief, or trivial. In determining this, you may consider the totality of the circumstances attending the movement including, but not limited to, the actual distance moved, or whether the movement increased the risk of harm above that which existed prior to the movement, or decreased the likelihood of detection, or increased both the danger inherent in a victim's foreseeable attempt to escape and the attacker's enhanced opportunity to commit additional crimes.
"Brief movements to facilitate the crime of child molesting are incidental to the commission of the crime of child molesting.
"On the other hand, movements to facilitate the child molesting that are for a substantial distance rather than brief are *765 not incidental to the commission of the child molesting.
"In order to prove this crime, each of the following elements must be proved:
"[1.] A person under the age of 14 was persuaded, enticed or seduced by false promises, misrepresentations, or the like, to go into another part of this county,
"[2.] The perpetrator of the movement had the specific intent to commit an act defined in Penal Code Section 288,
"[3.] The movement of the child under the age of 14 was for a substantial distance, or
"[4.] [T]he movement substantially increased the risk of harm to the child under the age of 14, over and above that necessarily present in the crime defined in Penal Code Section 288 itself." (Italics added.)
This instruction was taken from CALJIC No. 9.51, except for the italicized portion, which was lifted from CALJIC No. 9.50, the instruction on simple kidnapping (§ 207, subd. (a)).
Defendant contends the inserted language misstates the proper standard for determining if the victim was moved a substantial distance for purposes of aggravated kidnapping. The inserted language stated that, in determining substantial distance, the jury may consider if the movement "increased the risk of harm above that which existed prior to the movement." Defendant argues the proper standard is whether the movement increased the risk of harm beyond that inherent in the target offense. In other words, in assessing whether the movement was for a substantial distance, the jury may consider an increased risk of harm only if that increase was above and beyond that inherent in the target offense. According to defendant, the inserted language allowed the jury to find the movement was a substantial distance based solely on the heightened risk that he would commit the target offense in the new location.
Defendant did not raise this objection below. Although he objected to the added language, he did not do so on the basis raised on appeal. Consequently, he never gave the trial court an opportunity to modify the instruction to avoid any potential controversy. Failure to request a clarification of the instruction forfeits appellate review of the issue. (People v. Rodrigues (1994) 8 Cal.4th 1060, 1192, 36 Cal.Rptr.2d 235, 885 P.2d 1.) In any event, there was no error.
The inserted language stems from People v. Martinez (1999) 20 Cal.4th 225, 237, 83 Cal.Rptr.2d 533, 973 P.2d 512, where the California Supreme Court rejected the Daniels test for simple kidnapping. The court concluded the movement necessary for simple kidnapping need not substantially increase the risk of harm to the victim. The movement need only be "`substantial in character.'" (Id. at p. 235, 83 Cal.Rptr.2d 533, 973 P.2d 512.) However, in assessing the substantial character of the movement, the jury may consider a number of factors, including whether the movement substantially increased the risk of harm to the victim.
Defendant's argument that the language inserted in CALJIC No. 9.51 was improper is based on a premise that both prongs of the Daniels testthe substantial distance and the substantial increase in the risk of harmare measured in relation to the target offense. They are not. The substantial increase in the risk of harm prong is measured in relation to the risk of harm inherent in the target offense. However, as noted above, the substantial distance prong, which applies to both simple and aggravated kidnapping, is based on a number of factors, including the overall *766 distance and any increase in risk of harm to the victim. Inasmuch as there is a separate element for aggravated kidnapping that looks to whether the increased risk of harm is substantially greater than that inherent in the target offense, there is no reason to believe the increased risk of harm that may be considered in assessing whether the movement was for a substantial distance is so restricted. On the contrary, since this is merely one factor for the jury to consider, any increase in the risk of harm, including the enhanced risk of the target offense being committed, would be relevant. Hence, while there may have been other potential for confusion in the blended instruction, it did not misstate the factors that may be considered in assessing substantiality of the distance moved.

V[***]

VI

Refusal to Modify CALJIC No. 2.50.01
In light of the uncharged offense evidence, the jury was instructed pursuant to CALJIC No. 2.50.01 as follows:
"Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense on one or more occasions other than that charged in the Counts [3] and [4], the allegations and the lesser included offense to Counts [3] and [4] of the case.
"A `sexual offense' means a crime under the laws of this [State] that involves any of the following:
"A. Any conduct made criminal by Penal Code section 311, 311A, namely, possession of child pornography and Penal Code section 288(A), namely, child molest.
"B. ... [¶] Contact, without consent, between any part of the defendant's body and the genitals of another person.
"If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. If you find that the defendant had this disposition, you may, but you're not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused in Counts [3] and [4], allegations and the lesser included offense of attempted kidnapping with intent to molest. [ (§§ 664/207, subd. (b).) ] However, if you find by a preponderance of the evidence that the defendant committed prior sexual offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes in Counts [3] and [4].
"If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime. Unless you are otherwise instructed, you must not consider this evidence for any other purpose."
Defendant contends the court erred in refusing to modify the foregoing instruction to clarify that the permissible inference of a disposition to commit the charged offense applies only to the sexual portion of the offense, i.e., his intent to commit a lewd and lascivious act, and not the asportation portion.
The People respond that defendant is arguing, in essence, the crime of kidnapping to commit a lewd and lascivious act, as defined in Penal Code section 207, subdivision (b), is not a sexual offense within *767 the meaning of Evidence Code section 1108. The People misunderstand defendant's argument. Defendant contends the crime defined in Penal Code section 207, subdivision (b), involves two aspects, an intent to commit a sexual offense and a sufficient asportation. He argues the prior sex offense evidence is relevant to the first aspect but not to the second. In other words, the commission of prior sexual offenses will permit an inference that defendant is predisposed to intend to commit a sexual offense but will not permit an inference that he is predisposed to transport the victim to another location beforehand.
The People contend CALJIC No. 2.50.01 is a correct statement of the law and the Legislature made no attempt in Evidence Code section 1108 to parse out the sexual from the non-sexual elements of sexual offenses. We agree.
Evidence Code section 1108 states that where a defendant is accused of a sexual offense, evidence of another sexual offense is not made inadmissible by Evidence Code section 1101. In effect, Evidence Code section 1108 negates the exclusion required by Evidence Code section 1101 regarding evidence of the defendant's character or a trait of his character. Consequently, such evidence is admissible as long as it is relevant. (Evid.Code, § 351.)
Evidence that defendant committed a prior sexual offense is clearly relevant to whether he committed the sexual offenses with which he is charged. (People v. Falsetto, (1999) 21 Cal.4th 903, 915, 89 Cal. Rptr.2d 847, 986 P.2d 182.) Evidence Code section 1108 makes no attempt to distinguish between the sexual elements and the non-sexual elements of either the prior offense or the charged offense. The relevance of prior sexual offense evidence is limited to its tendency to prove a disposition to commit such offenses. Hence, CALJIC No. 2.50.01 instructs the jury that it may only be used for this purpose. This instruction, which also makes no attempt to parse the sexual portion of the offense from the non-sexual portion, has been recognized as a proper statement of the law. (See People v. Reliford (2003) 29 Cal.4th 1007, 1009, 130 Cal.Rptr.2d 254, 62 P.3d 601.)
In any event, evidence that defendant committed a prior sexual offense whereby he made false representations to induce a young girl to accompany him to a remote location where he sexually assaulted her is clearly relevant to a charge of kidnapping to commit a lewd and lascivious act. This evidence is relevant both to the sexual and to the asportation elements of the offense. Likewise, the possession of child pornography suggests an intent to lure children to a location where pornographic photographs may be obtained. Thus, even if it were proper to parse the sexual from the nonsexual aspects of an offense, any attempt to restrict CALJIC No. 2.50.01 in this way would have been unwarranted.

VII

Double Jeopardy and Retrial of the One-Strike Charges
Defendant was originally charged in count one with a lewd and lascivious act in violation of section 288 and a one-strike allegation under section 667.61, subdivision (e)(1). In the first trial, defendant was convicted on count one, but the jury deadlocked on the one-strike allegation. The court declared a mistrial. The prosecution thereafter amended the information to add a second one-strike allegation on count one, pursuant to section 667.61, subdivision (d)(2). The jury in the second trial found both one-strike allegations true.
Defendant contends prosecution of the one-strike allegations in the second *768 trial violated principles of double jeopardy. He acknowledges that retrial after a jury deadlock is normally permissible, but argues this matter falls within an exception for lesser included offenses. Under that exception, once a defendant has been convicted of a lesser included offense, he cannot be tried for a greater offense. According to defendant, the offense charged in count one, of which the jury found him guiltya violation of section 288is a lesser included offense of the one-strike charge under section 667.61, subdivision (e)(1), on which the jury deadlocked. Defendant points out that, as alleged here, the section 667.61, subdivision (e)(1), charge required a finding that he committed a lewd and lascivious act in violation of section 288. Hence, he argues, the section 288 violation is a lesser included offense.
The People contend defendant has forfeited this argument by failing to enter a double jeopardy plea prior to the second trial. We agree. A defendant must assert, his double jeopardy rights by entering an appropriate plea in order to preserve the issue for appeal. (People v. Scott (1997) 15 Cal.4th 1188, 1201, 65 Cal.Rptr.2d 240, 939 P.2d 354; People v. Marshall (1996) 13 Cal.4th 799, 824, fn. 1, 55 Cal.Rptr.2d 347, 919 P.2d 1280.) However, because defendant also claims ineffective assistance of counsel regarding his plea, we must consider whether defendant's double jeopardy claim has merit. (Ibid.) As we shall explain, it does not.
"The double jeopardy clauses of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, and article I, section 15, of the California Constitution, guarantee that a person shall not be placed twice `in jeopardy' for the `same offense.' The double jeopardy bar protects against a second prosecution for the same offense following an acquittal or conviction, and also protects against multiple punishment for the same offense. [Citations.] Under both federal and California law, greater and lesser included offenses constitute the `same offense' for purposes of double jeopardy." (People v. Bright (1996) 12 Cal.4th 652, 660-661, 49 Cal. Rptr.2d 732, 909 P.2d 1354 (Bright), overruled on other grounds in People v. Seel (2004) 34 Cal.4th 535, 550, fn. 6, 21 Cal. Rptr.3d 179,100 P.3d 870 (Seel).)
Under the doctrine of "implied acquittal," long recognized in California, a verdict on a lesser included offense constitutes an implied acquittal of any greater offenses on which the jury could have returned a verdict. (See People v. Fields (1996) 13 Cal.4th 289, 299, 52 Cal.Rptr.2d 282, 914 P.2d 832 (Fields).) However, the competing doctrine of "legal necessity", also recognized in California, "permits retrial following discharge of a jury that has been unable to agree on a verdict." (Id. at p. 300, 52 Cal.Rptr.2d 282, 914 P.2d 832.)
In Fields, supra, 13 Cal.4th 289, 52 Cal. Rptr.2d 282, 914 P.2d 832, the California Supreme Court concluded that, under both the federal and state Constitutions, where a jury deadlocks on a greater offense but returns a verdict of conviction on a lesser offense, the legal necessity doctrine prevails and retrial of the greater offense is not barred. (Id at pp. 302-303, 52 Cal. Rptr.2d 282, 914 P.2d 832.) However, the court went on to conclude that retrial is nevertheless barred by section 1023. (Fields, supra, at p. 307, 52 Cal.Rptr.2d 282, 914 P.2d 832.) That section reads: "When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included therein, of *769 which he might have been convicted under that accusatory pleading." (§ 1023.) Although this provision does not mention greater offenses, the court explained that section 1023 expressly bars retrial for the same offense and a later conviction for a greater offense necessarily includes a conviction for any lesser included offenses, including the one for which the defendant had already been convicted. (Fields, supra, at p. 306, 52 Cal.Rptr.2d 282, 914 P.2d 832.) Further, as a practical matter, the court reasoned that permitting retrial of a greater offense would permit the state to begin with prosecution of a lesser offense and proceed up the scale. (Id. at p. 307, 52. Cal.Rptr.2d 282, 914 P.2d 832.)
Defendant contends a violation of either one-strike charge, as alleged here, necessarily included a violation of section 288. Thus, the one-strike charges were greater offenses of section 288, of which he had already been convicted, and retrial is therefore barred by section 1023.
Defendant concedes that one-strike allegations have typically been viewed as alternate sentencing schemes rather than substantive offenses. (See People v. Mancebo (2002) 27 Cal.4th 735, 741-742, 117 Cal.Rptr.2d 550, 41 P.3d 556.) Nevertheless, he argues recent state and federal authorities have marked a change in the law in this regard.
In Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (Apprendi), the United States Supreme Court suggested labels do not matter when determining the constitutional significance of criminal allegations. Any fact that increases the penalty for a crime beyond the statutory maximum must be tried to a jury and proved beyond a reasonable doubt regardless of whether it is labeled a sentencing provision or an element of the offense. (Id. at p. 490, 120 S.Ct. at p. 2362, 147 L.Ed.2d at p. 455.) In a footnote, the court indicated that, "when the term `sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an `element' of the offense." (Id. at p. 494, fn. 19, 120 S.Ct. at p. 2365, fn. 19, 147 L.Ed.2d at p. 457, fn. 19.)
In Seel, supra, 34 Cal.4th 535, 21 Cal. Rptr.3d 179, 100 P.3d 870, the defendant was charged with attempted premeditated murder under section 664. That section provides that for any crime punishable by imprisonment in state prison, an attempt to commit that crime shall be punished by a state prison term of one-half the length. However, "if the crime attempted is willful, deliberate, and premeditated murder," the punishment shall be a life term. (§ 664, subd. (a).) The defendant was convicted as charged and sentenced to life in prison. However, the Court of Appeal found there was no substantial evidence to support the premeditation finding and reversed. The matter was remanded for retrial of the premeditation charge. (Seel, supra, at p. 540, 21 Cal.Rptr.3d 179, 100 P.3d 870.)
The Supreme Court reversed as to retrial, concluding federal double jeopardy principles barred retrial of the premeditation charge once the Court of Appeal determined the original jury finding was not supported by substantial evidence. (Seel, supra, 34 Cal.4th at p. 541, 21 Cal.Rptr.3d 179, 100 P.3d 870.) The court explained that, "[b]y `exposing] the defendant to a greater punishment than that authorized by the jury's guilty verdict' [citation], section 664(a) is `the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict.'" (Id. at p. 548, 21 Cal.Rptr.3d 179, 100 P.3d 870.) In fact, the court noted, "`[t]he *770 defendant's intent in committing a crime is perhaps as close as one might hope to come to a core criminal offense "element." '" (Id. at p. 549, 21 Cal.Rptr.3d 179,100 P.3d 870.)
Defendant contends the reasoning of Apprendi and Seel on what constitutes an element of an offense should govern the interpretation of section 1023. In Fields, our high court concluded section 1023 bars retrial of a greater offense when the jury convicts on the lesser offense and deadlocks on the greater offense. According to defendant, Apprendi and Seel mandate that a factor requiring increased punishment should be treated as an element of a greater offense. Hence, he argues, retrial of that factor after a jury convicts on the basic offense but deadlocks on the sentencing factor is prohibited by section 1023.
We are not persuaded. In Bright, supra, 12 Cal.4th 652, 49 Cal.Rptr.2d 732, 909 P.2d 1354, overruled on other grounds in Seel, supra, 34 Cal.4th at page 550, footnote 6, 21 Cal.Rptr.3d 179, 100 P.3d 870, the defendant was convicted of attempted premeditated murder under section 664, subdivision (a). The jury found him guilty of attempted murder but deadlocked on the premeditation charge. The trial court declared a mistrial. The defendant thereafter moved to strike the premeditation charge, arguing his conviction for attempted murder barred retrial on the premeditation charge, because attempted murder is a lesser included offense of attempted premeditated murder. The trial court agreed and granted the motion. The Court of Appeal reversed, concluding attempted premeditated murder is not a separate, greater offense. (Id. at pp. 658-660, 49 Cal.Rptr.2d 732, 909 P.2d 1354.)
The Supreme Court affirmed. The high court explained the crime of attempted murder is not separated into degrees and the premeditation allegation is a penalty provision rather than an element of a greater offense of attempted premeditated murder. (Id. at p. 669, 49 Cal.Rptr.2d 732, 909 P.2d 1354.) The court pointed out that a jury does not even consider the penalty provision until it has found the defendant guilty of attempted murder. Thus, a guilty verdict on an attempted murder charge cannot be considered an implied acquittal of a greater offense of attempted premeditated murder. (Id. at p. 661, 49 Cal.Rptr.2d 732, 909 P.2d 1354.)
Although the high court in Seel concluded the reasoning of Bright, to the extent it conflicted with intervening United States Supreme Court decisions such as Apprendi is no longer controlling (Seel, supra, 34 Cal.4th at p. 550, fn. 6, 21 Cal. Rptr.3d 179, 100 P.3d 870), the court nevertheless recognized the continuing vitality of the holding in Bright. In Seel, the defendant argued Bright is distinguishable, because the trial court there declared a mistrial after the jury deadlocked on the penalty charge, whereas in Seel the Court of Appeal concluded there was no evidence to support the penalty charge. (Seel, supra, at p. 544, 21 Cal.Rptr.3d 179,100 P.3d 870.) According to the defendant, "reversal based on insufficient evidence is equivalent to an acquittal and thus precludes retrial of the penalty allegation." (Ibid.) However, a mistrial following a jury deadlock is not the functional equivalent of an acquittal.
The high court agreed Bright is distinguishable, explaining: "Unlike the situation here, where the Court of Appeal reversed the judgment based on its determination of evidentiary insufficiency, the jury in Bright was `unable to make a finding on the premeditation allegation.' (Bright, supra, 12 Cal.4th at p. 658[, 49 Cal.Rptr.2d 732, 909 P.2d 1354].) Neither a court nor a jury made a determination that the prosecution *771 failed to prove its case. Significantly, '[a] mistrial does not constitute a termination of jeopardy, and accordingly double jeopardy does not arise from the legal necessity of a mistrial. [Citation.]' (Id. at p. 662[, 49 Cal.Rptr.2d 732, 909 P.2d 1354].) This difference in procedural postures distinguishes Bright from the case here. (United States v. DiFrancesco (1980) 449 U.S. 117, 130-131[, 101 S.Ct. 426, 66 L.Ed.2d 328] [federal double jeopardy clause bars retrial for evidentiary insufficiency but not for mistrial due to `manifest necessity'].)" (Seel, supra, 34 Cal.4th at p. 550, 21 Cal.Rptr.3d 179, 100 P.3d 870, fn. omitted.)
In the present matter, as in Bright, there was no termination of jeopardy on the one-strike sentencing charge when the jury deadlocked and the trial court was forced to declare a mistrial. Hence, retrial of the charge does not implicate constitutional double jeopardy principles.
This factor distinguishes the present matter from Fields as well. In Fields, the defendant was convicted of a lesser included offense after the jury deadlocked on a greater offense. The completed conviction on the lesser offense barred a subsequent conviction of the greater offense, because section 1023 prohibits conviction of an offense after an earlier conviction or acquittal of that same offense and a conviction on a greater offense includes a conviction on all lesser included offenses. Hence, a subsequent conviction for a greater offense would amount to a reconviction of the lesser offense.
Here, there was no completed conviction of the lesser offense of section 288. Rather, on count one, the defendant was charged with a violation of section 288 and a sentencing factor for kidnapping the victim beforehand. Prosecution on this charge was suspended when the jury could not reach a verdict on the sentencing factor. A new jury was thereafter empanelled and the sentencing factor was found true. Only then was jeopardy on count one terminated. The true finding on the sentencing factor in the second trial was not a conviction for a greater offense as in Fields, but a completion of the single conviction on the offense charged. Hence, there was no violation of section 1023.
Defendant contends he is nevertheless entitled to relief under the state and federal Constitutions. Although Fields held there is no constitutional prohibition to retrial of a greater offense following conviction of a lesser offense and deadlock on the greater offense, defendant argues "[t]he state and federal [Constitutions protect against successive prosecution for the same offense after both acquittal and conviction," and "Fields addressed the former but not the latter." If by this defendant means Fields considered whether a defendant could be retried on a greater offense after acquittal on a lesser offense, he is wrong. In Fields, the defendant was convicted of the lesser offense. If, on the other hand, defendant is suggesting that Fields addressed whether a defendant may be prosecuted for a greater offense after acquittal of that same offense, he is again wrong. The Fields defendant was not acquitted of the greater offense. The jury was unable to reach a verdict. At any rate, as we have explained, there was no "successive" prosecution in this matter. Jeopardy did not terminate on count one until after the second trial.

VIII

Sufficiency of the Evidence of One-Strike Finding
In the second trial, defendant was charged with two one-strike circumstances under section 667.61, subdivisions (d)(2) *772 and (e)(1). Section 667.61 reads, in relevant part:
"(a) Any person who is convicted of an offense specified in subdivision (c) under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 25 years to life.
"(b) Except as provided in subdivision (a), any person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 15 years to life.
"(c) This section shall apply to any of the following offenses: [¶] ... [¶]
"(8) Lewd or lascivious act, in violation of subdivision (a) of Section 288. [¶] ... [¶]
"(d) The following circumstances shall apply to the offenses specified in subdivision (c): [¶] ... [¶]
"(2) The defendant kidnapped the victim of the present offense and-the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense in subdivision (c). [¶] ... [¶]
"(e) The following circumstances shall apply to the offenses specified in subdivision (c):
"(1) Except as provided in paragraph (2) of subdivision (d), the defendant kidnapped the victim of the present offense in violation of Section 207, 209, or 209.5
The jury found both one-strike charges to be true and defendant was sentenced accordingly.
Defendant contends the true finding on the section 667.61, subdivision (e)(1), charge is not supported by substantial evidence. He argues the true finding on subdivision (d)(2) precludes the true finding on subdivision (e)(1) by virtue of the introductory clause of the latter subdivision.
The People counter that defendant's interpretation of section 667.61, subdivision (e)(1), would lead to absurd results. According to the People, if subdivision (e)(1) does not apply where subdivision (d)(2) applies, i.e., where the kidnapping results in a substantial increase in the risk of harm beyond that inherent in the target offense, it would only apply to simple kidnapping under section 207, subdivision (a). Yet, the People argue, the Legislature must have had a reason for including the rest of section 207 and sections 209 and 209.5 within the scope of section 667.61, subdivision (e)(1).
Although styled as a challenge to the sufficiency of the evidence, defendant's contention actually raises an issue of statutory construction. Defendant contends the introductory clause of section 667.61, subdivision (e)(1), must be read to exclude from the coverage of that subdivision circumstances that satisfy section 667.61, subdivision (d)(2). In other words, according to defendant, subdivisions (d)(2) and (e)(1) are mutually exclusive. The People argue this interpretation would render the list of offenses in subdivision (e)(1) superfluous. As we shall explain, defendant has the better argument.
In matters of statutory construction our fundamental concern is with legislative intent. (Brawn v. Kelly Broadcasting Co. (1989) 48 Cal.3d 711, 724, 257 Cal.Rptr. 708, 771 P.2d 406.) In order to determine intent we begin with the language of the statute itself. (Ibid.) If the language is clear, there is no need to resort to other indicia of intent and no need for further construction. (Lungren v. Deukmejian *773 (1988) 45 Cal.3d 727, 735, 248 Cal.Rptr. 115, 755 P.2d 299.)
"[E]very statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect. [Citation.] Legislative intent will be determined so far as possible from the language of the statutes, read as a whole." (County of Fresno v. Clovis Unified School Dist. (1988) 204 Cal.App.3d 417, 426, 251 Cal.Rptr. 170.)
If possible, significance should be given to every word of a statute and any construction that renders a word or phrase surplusage should be avoided. (Delaney v. Superior Court (1990) 50 Cal.3d 785, 798-799, 268 Cal.Rptr. 753, 789 P.2d 934.) However, "[l]iteral construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (Lungren v. Deukmejian, supra, 45 Cal.3d at p. 735, 248 Cal.Rptr. 115, 755 P.2d 299.)
"`[When] language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted. [¶] The defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute.'" (People v. Davis (1981) 29 Cal.3d 814, 828, 176 Cal.Rptr. 521, 633 P.2d 186.) However, the rule that ambiguous statutes must be construed in favor of a criminal defendant "is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise..." (People v. Jones (1988) 46 Cal.3d 585, 599, 250 Cal.Rptr. 635, 758 P.2d 1165.)
With these principles in mind, we turn to the language of section 667.61, subdivision (e)(1). It expressly includes in its ambit kidnapping in violation of section 207, 209, or 209.5. It is reasonable to assume, as the People argue, that the Legislature would not have listed these sections if it did not intend kidnapping falling within them to be covered by subdivision (e)(1). However, this does not mean the Legislature intended all kidnapping falling within these sections to be included. This is where the introductory clause, "Except as provided in paragraph (2) of subdivision (d)," comes in. (§ 667.61, subd. (e)(1).) Although somewhat opaque, this clause arguably excludes from the scope of subdivision (e)(1) any kidnapping that would qualify under section 667.61, subdivision (d)(2), i.e., where "the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense."
The People suggest this reading of section 667.61, subdivision (e)(1), would limit its coverage to kidnapping in violation of section 207, subdivision (a). It would not.
Section 207 encompasses four categories of kidnapping: simple kidnapping (§ 207, subd. (a)); kidnapping to commit a lewd and lascivious act (§ 207, subd. (b)); kidnapping for the purpose of involuntary servitude (§ 207, subd. (c)); and kidnapping whereby the victim is abducted or taken by force or fraud from another state and brought into this state (§ 207, subd. (d)). Assuming the Daniels test applies to kidnapping under subdivisions (b) and (c), because they involve a target offense, this would still leave subdivisions (a) and (d) within the scope of section 667.61, subdivision (e)(1).
Section 209 encompasses two types of kidnapping: kidnapping for ransom (§ 209, subd. (a)); and kidnapping to commit robbery or various sex offenses (§ 209, subd. (b)). The People argue both types of *774 kidnapping involve a target offense and, therefore, require proof that movement of the victim substantially increased the risk of harm beyond that inherent in the target offense. We disagree. Section 209, subdivision (b)(2), states: "This subdivision [i.e., subdivision (b)] shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." If the Legislature had intended this limitation to apply as well to subdivision (a), it would have said so.
The People contend section 209, subdivision (d), proves the Legislature intended section 667.61, subdivision (e)(1), "to apply to all offenses defined in section 209." We disagree. Section 209, subdivision (d), reads: "[Section 209, subdivision (b) shall not be construed to supersede or affect Section 667.61. A person may be charged with a violation of [section 209,] subdivision (b) and Section 667.61. However, a person may not be punished under [section 209,] subdivision (b) and Section 667.61 for the same act that constitutes a violation of both [section 209,] subdivision (b) and Section 667.61." Section 209, subdivision (d), says section 209, subdivision (b), shall not supersede section 6617.61. It does not say section 209, subdivision (b), shall not supersede subdivision (e)(1) of section 667.61. Section 209, subdivision (b), and section 667.61, subdivision (e)(1), are incompatible. However, section 209, subdivision (b), is not incompatible with section 667.61, subdivision (d)(2). A person may be charged with a violation of both section 209, subdivision (b), and section 667.61, subdivision (d)(2). Thus, section 209, subdivision (b), does not supersede all of section 667.61.
The last code section listed in section 667.61, subdivision (e)(1), is section 209.5. It applies to one type of kidnapping kidnapping for the purpose of facilitating a carjacking. (§ 209.5, subd. (a).) However, subdivision (b) restricts the scope of section 209.5. It reads: "This section shall only apply if the movement of the victim is beyond that merely incidental to the commission of the carjacking, the victim is moved a substantial distance from the vicinity of the carjacking, and the movement of the victim increases the risk of harm to the victim over and above that necessarily present in the crime of carjacking itself."
The People argue there is no type of kidnapping falling within the scope of section 209.5 that would not also satisfy section 667.61, subdivision (d)(2). Hence, the People argue, under defendant's interpretation of section 667.61, subdivision (e)(1), the inclusion of section 209.5 in section 667.61, subdivision (e)(1), would be superfluous. We again disagree.
Section 209.5 applies if the defendant committed a kidnapping during a carjacking and the kidnapping "increase[d] the risk of harm to the victim over and above that necessarily present in the crime of carjacking itself." (§ 209.5, subd. (b), italics added.) Section 667.61, subdivision (d)(2), applies if the defendant kidnapped the victim and committed a sexual offense, but only if the kidnapping "substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in" the sexual offense. (§ 667.61, subd. (d)(2).) If defendant's interpretation of section 667.61, subdivision (e)(1), is correct, i.e., it does not apply where section 667.61, subdivision (d)(2), applies, then a violation of section 209.5 could fall within section 667.61, subdivision (e)(1), only if the defendant kidnapped the victim during a carjacking, committed a sexual offense against the victim, and the movement of the victim "increase[d] the risk of harm to the victim over and above that necessarily present in the crime of *775 carjacking itself (§ 209.5, subd. (b)) but did not "substantially increase[ ] the risk of harm to the victim over and above that level of risk necessarily inherent in" the sexual offense (§ 667.61, subd. (d)(2)).
We shall not attempt to articulate a specific circumstance under which a movement might increase the risk of harm to the victim beyond that inherent in the carjacking but not substantially increase the risk inherent in the sexual offense. However, because one standard concerns any increase while the other concerns only a substantial increase, and the risks inherent in carjacking are obviously different from those inherent in a sexual offense, we have no difficulty in concluding there may be instances where section 667.61, subdivision (e)(1), would apply to a violation of section 209.5.
The People's interpretation of section 667.61, subdivision (e)(1), would read the introductory clause out of that section. If that clause was not intended to limit the scope of subdivision (e)(1) to situations where subdivision (d)(2) does not apply, we can see no other purpose for it. Thus, under the People's interpretation, the clause would become superfluous. Yet, "`"[c]ourts should give meaning to every word of a statute, if possible, and should avoid a construction making any word surplusage." [Citation.]' [Citation.]" (Cooley v. Superior Court (2002) 29 Cal.4th 228, 249, 127 Cal.Rptr.2d 177, 57 P.3d 654.) Also, to the extent the clause is ambiguous, it should be interpreted in favor of defendant. Thus, we conclude section 667.61, subdivision (e)(1), and section 667.61, subdivision (d)(2), are mutually exclusive.
In the present matter, the prosecution charged defendant under section 667.61, subdivision (d)(2), the jury found the charge to be true, and defendant does not challenge the factual underpinnings of that finding. Hence, the jury's true finding on the section 667.61, subdivision (e)(1), charge cannot stand.

IX

Acquittal of the One-Strike Charge in the First Trial
Following the presentation of evidence in the first trial, defendant moved for acquittal on the section 667.61, subdivision (e)(1), charge in count one. The trial court denied the motion.
Defendant contends that, for the reasons stated in the preceding section, the evidence presented at the first trial was insufficient to support a true finding on the section 667.61, subdivision (e)(1), charge. Defendant further contends that, if the court had granted the motion for acquittal, prosecution on count one would have been complete "and the People would have been barred by double jeopardy principles from amending the information to add an additional sentencing charge under section 667.61, subdivision (d)(2). It is the true finding on this additional charge that defendant now seeks to have stricken.
The People contend defendant has forfeited this argument by failing to object to amendment of the information. However, even if this were true, we shall address defendant's contention in order to forestall a claim of ineffective assistance of counsel.
As discussed in the preceding section, in order to harmonize subdivisions (d)(2) and (e)(1) of section 667.61, the introductory clause of subdivision (e)(1) must be read to preclude application of that subdivision whenever subdivision (d)(2) applies. In the original information, defendant was charged under subdivision (e)(1) but not subdivision (d)(2). He now argues that, because the facts presented in the first trial established a violation of subdivision (d)(2), his motion for acquittal on the subdivision *776 (e)(1) charge should have been granted. In effect, defendant argues the prosecution proved too much.
In denying the motion for acquittal, the trial court concluded the introductory clause of subdivision (e)(1) must be read to give the prosecution a charging option. In essence, where the victim was kidnapped "in violation of Section 207, 209, or 209.5" (§ 667.61, subd. (e)(1)) and the movement of the victim "substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense" (§ 667.61, subd. (d)(2)), the prosecution has the option of charging under either subdivision (e)(1) or subdivision (d)(2). If the prosecution chooses the former, a true finding is not precluded by the fact a charge under subdivision (d)(2) was also supported by the evidence. In effect, the trial court read the introductory clause of subdivision (e)(1)"[e]xcept as provided in paragraph (2) of subdivision (d)"as applying only where subdivision (d)(2) is actually charged rather than, where it could have been charged.
Assuming defendant was even authorized to move for acquittal of a sentencing charge (see People v. Norris (2002) 95 Cal.App.4th 475, 480, 115 Cal.Rptr.2d 540), we agree with the trial court his motion was without merit, because section 667.61 gave the prosecution the option of charging under either subdivision (d)(2) or subdivision (e)(1). However, because it cannot always be foreseen how the evidence will come out at trial, we further conclude the prosecution also has the option of charging under both subdivisions in the alternative.
As noted in the preceding section, the introductory clause of section 667.61, subdivision (e)(1), is less than clear. Does it mean "except where the circumstances described in subdivision (d)(2) are present," as defendant argues, or "except where subdivision (d)(2) is applied," as the trial court concluded?
"In California, the district attorney of each county is the public prosecutor and is vested with the power to charge persons within that jurisdiction with criminal offenses. (Gov.Code, §§ 26500-26501.) That official is not required to file all possible criminal cases but is vested with substantial discretion in selecting which cases to charge and at what level. [Citation.]" (People v. Andrews (1998) 65 Cal.App.4th 1098, 1102, 76 Cal. Rptr.2d 823.) The prosecutor's charging discretion takes three forms: (1) determining whether there is sufficient evidence to warrant prosecution; (2) determining the appropriate charges to file; and (3) exercising discretion not to prosecute. (People v. Wallace (1985) 169 Cal.App.3d 406, 409, 215 Cal.Rptr. 203.) "The district attorney's unlimited discretion in the crime-charging function has been uniformly recognized." (Ibid.)
This discretion includes the power to decide who to charge and for what crimes (People v. Lucas (1995) 12 Cal.4th 415, 477, 48 Cal.Rptr.2d 525, 907 P.2d 373), the power to charge an offense as a felony or a misdemeanor when the facts support either (People v. Andreotti (2001) 91 Cal.App.4th 1263, 1273, 111 Cal. Rptr.2d 462), the power to charge a special circumstance, thereby making the defendant eligible for the death penalty (Lucas, supra, at p. 477, 48 Cal.Rptr.2d 525, 907 P.2d 373), and the power to plead and prove the allegations required by section 667.61 (People v. Johnson (2002) 28 Cal.4th 240, 248, 121 Cal.Rptr.2d 197, 47 P.3d 1064). In addition, where the defendant's conduct appears to violate more than one criminal statute, the prosecutor may decide to charge under more than one "to encourage a plea of guilty to one of the *777 crimes or to provide the judge with a sufficient range of sentencing options." (Levenson, On Cal. Criminal Proc. (2006) Attorney-Client Relationship, § 1.5, p. 6.)
Section 667.61 authorizes a life term whenever the circumstances provided therein are satisfied. Subdivision (a) specifies a term of 25 years to life if one or more of the circumstances listed in subdivision (d) or two or more of the circumstances listed in subdivision (e) are satisfied. Subdivision (b) specifies a term of 15 years to life if one of the circumstances listed in subdivision (e) is satisfied. Hence, a finding under subdivision (e)(1) alone will subject the defendant to a term of 15 years to life, whereas a finding under subdivision (d)(2) will subject him to a term of 25 years to life. Therefore, where the circumstances of the defendant's offense satisfy both subdivision (e)(1) and subdivision (d)(2), the decision of the prosecutor to charge under one or the other may have a significant effect on the sentence ultimately imposed.
Defendant's interpretation of section 667.61, subdivision (e)(1), would eliminate the prosecutor's discretion to charge under that provision whenever the facts satisfy section 667.61, subdivision (d)(2). In effect, whenever a kidnapping involved movement of the victim that substantially increased the risk of harm above and beyond that inherent in the target offense, the prosecutor would be forced to charge under subdivision (d)(2). This would eliminate the prosecutor's discretion to seek the more lenient punishment provided by subdivision (e)(1).
As explained above, in matters of statutory construction, our fundamental concern is with legislative intent. (Brawn v. Kelly Broadcasting Co., supra, 48 Cal.3d at p. 724, 257 Cal.Rptr. 708, 771 P.2d 406.) Given the universal recognition of prosecutorial discretion in charging criminal offenses, it is not reasonable to conclude the Legislature intended to eliminate such discretion by way of the introductory clause of section 667.61, subdivision (e)(1), without a clearer statement of such intent.
Furthermore, as also explained earlier, when language of a penal provision is reasonably susceptible to two constructions, ordinarily the construction more favorable to the offender is adopted. (People v. Davis, supra, 29 Cal.3d at p. 828, 176 Cal.Rptr. 521, 633 P.2d 186.) Although defendant here seeks an interpretation of section 667.61, subdivision (e)(1) that would inure to his benefit in this matter, that interpretation would be detrimental to criminal defendants in general. If subdivision (e)(1) is interpreted not to apply whenever subdivision (d)(2) could be charged, this would eliminate prosecutorial discretion to charge under the more lenient subdivision (e)(1).
The rule of construction of ambiguous provisions in favor of the offender "aids in meeting the requirement that a defendant have fair warning of the consequences of his acts reflected in the constitutional prohibition against ex post facto laws." (People v. Overstreet (1986) 42 Cal.3d 891, 896, 231 Cal.Rptr. 213, 726 P.2d 1288.) In this instance, defendant had fair warning that his actions could subject him to sentencing not only under section 667.61, subdivision (e)(1), but also under the more onerous section 667.61, subdivision (d)(2). However, under defendant's interpretation, some future defendant, whose crime satisfies the requirements of section 667.61, subdivision (d)(2), might be surprised to find out the prosecution has no discretion to charge under the more lenient section 667.61, subdivision (e)(1).
We conclude that where the defendant, in connection with the commission of an offense specified in section 667.61, subdivision (c), kidnaps the victim "in violation of *778 Section 207, 209, or 209.5" (§ 667.61, subd. (e)(1)) and the movement of the victim "substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense" (§ 667.61, subd. (d)(2)), the prosecution has the option of charging under either section 667.6]., subdivision (e)(1), or section 667.61, subdivision (d)(2), or both. However, if the prosecution chooses to charge under both, and the jury finds the charge under section 667.61, subdivision (d)(2), to be true, a true finding under section 667.61, subdivision (e)(1), is precluded.
Because defendant was not charged under section 667.61, subdivision (d)(2), in the original information, the introductory clause of section 667.61, subdivision (e)(1), did not come into play and a true finding under that provision was not precluded. Therefore, the only question for the trial court on defendant's motion for acquittal was whether the prosecution presented sufficient evidence in the first trial to go to the jury on whether defendant kidnapped A.B. in violation of section 207. Defendant does not challenge the sufficiency of the evidence in this regard.
In any event, the People contend defendant's assumption that, if his motion for acquittal in the first trial would have been granted, prosecution on count one would have ended, is unwarranted. This assumption overlooks the fact that, in addition to the section 667.61, subdivision (e)(1), charge, the jury deadlocked on a charge under section 667.8, subdivision (b). That subdivision provides in relevant part: "Any person convicted of a felony violation of ... Section 288 ... who, for the purpose of committing' that sexual offense, kidnapped the victim, who was under the age of 14 years at the time of the offense, in violation of Section 207 or 209, shall be punished by an additional term of 15 years...." According to the People, even if the trial court should have granted defendant's motion for acquittal on the section 667.61, subdivision (e)(1), charge, the presence of the section 667.8, subdivision (b), charge would have precluded jeopardy from terminating on count one. Hence, the People were free to amend that count to add a new sentencing charge.
Defendant responds that the section 667.8, subdivision (b), charge was not a "live issue" because the prosecution abandoned it at the second trial. Hence, defendant argues, it could not preclude jeopardy from terminating. However, it is reasonable to assume the prosecution would not have abandoned the section 667.8, subdivision (b), charge if it had been precluded from pursuing the section 667.61 charges.
Thus, even if the motion for acquittal should have been granted, jeopardy did not terminate on count one following the jury deadlock in the first trial. Therefore, the prosecution was free, with leave of court, to amend the information to state additional charges. (People v. Williams (1997) 56 Cal.App.4th 927, 932, 66 Cal. Rptr.2d 329; People v. Flowers (1971) 14 Cal.App.3d 1017, 1020-1021, 92 Cal.Rptr. 647.)

X

Lesser Included Offense
Defendant contends his conviction on count three must be vacated because it is a lesser included offense of that charged in count one. Count three charged kidnapping to commit a lewd and lascivious act in violation of section 207, subdivision (b), with respect to A.B. Count one charged a lewd and lascivious act against A.B. coupled with sentencing factors charging kidnapping. According to defendant, the elements of section 207, subdivision (b), as alleged in count three, are a kidnapping *779 and an intent to violate section 288, whereas the elements of section 288 coupled with sentencing factors, as alleged in count one, are a kidnapping, an intent to violate section 288, and a violation of section 288. Hence, defendant argues, the elements of count three are completely subsumed within count one.
Inasmuch as we have already concluded the true finding on section 667.61, subdivision (e)(1), cannot stand, we need not consider that sentencing factor.
As a general matter, "a person may be convicted of, although not punished for, more than one crime arising out of the same act or course of conduct." (People v. Reed (2006) 38 Cal.4th 1224, 1226, 45 Cal.Rptr.3d 353, 137 P.3d 184.) Section 954 permits multiple convictions, while section 654 prohibits multiple punishments. However, a judicially created exception to the general rule "`prohibits multiple convictions based on necessarily included offenses.' [Citations.] `[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.'" (Reed, supra, at p. 1227, 45 Cal.Rptr.3d 353,137 P.3d 184.)
The courts have applied two tests in determining if one offense is necessarily included within another: "the `elements' test and the `accusatory pleading' test. Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former." (People v. Reed, supra, 38 Cal.4th at pp. 1227-1228, 45 Cal.Rptr.3d 353, 137 P.3d 184.) In Reed the state high court concluded that, in deciding whether a defendant may be convicted of multiple offenses arising from the same act or course of conduct, the elements test alone should be used. (Id at p. 1229, 45 Cal.Rptr.3d 353,137 P.3d 184.)
Assuming it is proper to consider sentencing factors coupled with substantive offenses as a single offense, section 207, subdivision (b), is not a lesser included offense of section 288 coupled with section 667.61, subdivision (d)(2), under the elements test. As defendant asserts, the elements of section 207, subdivision (b), consist of a kidnapping and an intent to violate section 288. However, the elements of section 288 coupled with section 667.61, subdivision (d)(2), are a kidnapping and a violation of section 288. There is no requirement that, at the time of the kidnapping, the defendant intended to violate section 288. Under section 667.61, subdivision (d)(2), it is only necessary that the defendant kidnap the victim and the movement substantially increase the risk of harm "over and above that level of risk necessarily inherent in the underlying offense specified in subdivision (c) [here, section 288]."
Because the offense alleged in count three is not a lesser included offense of that charged in count one coupled with the sentencing factor, conviction on count three was not prohibited. And, inasmuch as the 11-year term imposed on count three was stayed, there was no violation of section 654.

XI[]

DISPOSITION
The trial court is directed to strike the true finding on the section 667.61, subdivision (e)(1), charge and the 15 years to life *780 term on that charge. In all other respects, the judgment is affirmed. The trial court is further directed to prepare an amended abstract of judgment to reflect these changes and to forward a copy to the Department of Corrections and Rehabilitation.
SIMS, Acting P.J., and CANTISAKAUYE, J., concur.
NOTES
[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I through III, V, and XI of the Discussion.
[**] See footnote *, ante.
[***] See footnote *, ante.
[] See footnote *, ante.